# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEAN RAIKEN; and CHERYL RAIKEN,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.; and DOES 1 through 25,<br><br>　　　　　　　　　Defendants. | Case No.: 3:18-cv-02520-H-BGS<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>[Doc. No. 10] |

On December 21, 2019, Defendant Wells Fargo Bank, N.A. filed a motion to dismiss Plaintiffs Dean and Cheryl Raiken's (collectively, "Plaintiffs") first amended complaint. (Doc. No. 10.) On February 5, 2019, Plaintiffs filed their opposition. (Doc. No. 12.) Defendant replied on February 11, 2019. (Doc. No. 14.) For the following reasons, the Court grants Defendant's motion to dismiss.

## **Background**

In January 2004, Plaintiffs obtained from Defendant a Home Equity Line of Credit for their home. (Doc. Nos. 9 ¶ 8; 11, Request for Judicial Notice ("RJN") Exh. B.)[1]

---

[1] Along with its motion to dismiss, Defendant filed a request for judicial notice. (Doc. No. 11.) The Court takes judicial notice of Defendant's exhibits, pursuant to Federal Rule of Evidence 201(b), as all of the documents were either publically recorded or filed in Plaintiffs' 2012 bankruptcy case. See Lee v.

1

Plaintiffs made payments on the loan until December 2012. (Doc. No. 9 ¶ 9.) In December 2012, Plaintiffs filed for bankruptcy. (Id. ¶ 10; RJN Exh. C.) In 2013, Plaintiffs emerged from the bankruptcy in 2013 and resumed payments on the loan. (Doc. No. 9 ¶ 10.) In November 2013, Defendant informed Plaintiffs that a balloon payment on their loan would be due February 20, 2014. (Id. ¶ 11.) Plaintiffs allege that they were surprised by the balloon payment. (Id. ¶ 12.)

Plaintiffs were unable to pay the balloon payment. (Id. ¶ 13.) In letters to Plaintiffs, Defendant referred to options to keep their home, leading Plaintiffs to contact Defendant to request a loan modification in January 2014. (Id. ¶¶ 25, 28.) In April 2014, Plaintiffs were informed that they did not meet requirements for the "Principal Forgiveness" modification. (Id. ¶ 25.) On July 10, 2014, Plaintiffs were informed by one of Defendant's employees that letters threatening foreclosure and demanding balloon payment were automatically generated, and Defendant would not take action as long as Plaintiffs were working with a "Home Preservation Specialist." (Id. ¶ 19.) Thus, believing that it would prevent foreclosure, Plaintiffs maintained contact with a "Home Preservation Specialist" and continued to make monthly payments. (Id. ¶¶ 17, 20.) Between August 2014 and July 2017, Plaintiffs made five more requests for modifications, which were all denied as incomplete or for failure to meet Defendant's program requirements. (Id. ¶ 25.)

Between November 2013 and October 2017, Plaintiffs reduced their balance from $70,000 to $53,158.70. (Id. ¶ 21.) Then, on October 30, 2017, Defendant recorded a "Notice of Default" as to Plaintiffs' loan. (Id. ¶ 30; RJN Exh. F.) After the notice of default, Defendant still sent Plaintiffs another statement of account, to which Plaintiffs responded by sending a payment that Defendant accepted, but then refunded. (Doc. No. 9 ¶¶ 32–33.) In January 2018, Plaintiffs spoke to and wrote emails to two of Defendant's employees regarding their situation. (Id. ¶ 37.) Defendant proceeded with foreclosure.

---

City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001) ("[U]nder Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record.'").

(Id. ¶ 40.) Plaintiffs then sold their home in early 2018. (Id. ¶ 41; RJN Exh. G.)

Accordingly, Plaintiffs commenced this action in San Diego Superior Court on September 27, 2018. (Doc. No. 1 at 8.) Defendant then removed to this Court based on diversity jurisdiction on November 2, 2018. (Id. at 1.) Plaintiffs filed the first amended complaint on December 7, 2018. (Doc. No. 9.) Plaintiffs allege claims for: (1) slander of title; (2) violations of the Real Estate Settlement Procedures Act ("RESPA"); (3) breach of contract; (4) fraud; (5) intentional infliction of emotional distress; (6) violations of California's Unfair Competition Law, Business and Professions Code §§ 17200, et seq. ("UCL"); (7) violations of California's False Advertising Law, Business and Professions Code §§ 17500, et seq. ("FAL"); and (8) financial elder abuse. (Id.)

## Discussion

### I. Legal Standard for Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted. See Conservation Force v. Salazar, 646 F.3d 1240, 1241 (9th Cir. 2011). The Federal Rule of Civil Procedure 8(a)(2)'s plausibility standard governs a plaintiff's claims. The Supreme Court has explained Rule 8(a)(2) as follows:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. As the Court held in [Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)], the pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (citations, quotation marks, and brackets omitted).

In reviewing a Rule 12(b)(6) motion to dismiss, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

"Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted). In addition, a court need not accept legal conclusions as true. Iqbal, 556 U.S. at 678. Further, it is improper for a court to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). Finally, a court may consider documents incorporated into the complaint by reference and items that are proper subjects of judicial notice. See Coto Settlement, 593 F.3d at 1038.

If the court dismisses a complaint for failure to state a claim, it must then determine whether to grant leave to amend. See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995). "A district court may deny a plaintiff leave to amend if it determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency, or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010) (internal quotation marks and citations omitted).

## II.  Analysis

Plaintiffs allege claims for: (1) slander of title; (2) violations of RESPA; (3) breach of contract; (4) fraud; (5) intentional infliction of emotional distress; (6) financial elder abuse; and (7) violations of California's UCL and FAL. (Doc. No. 9.) Defendant argues that Plaintiffs' complaint should be dismissed because each of Plaintiffs claims fails to meet the pleading requirements. (Doc. No. 10-1.) After considering the parties' arguments, the Court concludes that Plaintiffs have failed to state a claim under Rule 12(b)(6) and therefore Plaintiffs' complaint should be dismissed.

### A.  Slander of Title

Plaintiffs' claim for slander of title alleges that Defendant's recording of the notice of default and initiation of foreclosure proceedings were false and malicious. (Doc. No. 9 ¶¶ 55–64.) The elements of a cause of action for slander of title are: "(1) a publication, (2) which is without privilege or justification, (3) which is false, and (4) which causes

4

3:18-cv-02520-H-BGS

direct and immediate pecuniary loss." <u>Manhattan Loft, LLC v. Mercury Liquors, Inc.</u>, 173 Cal. App. 4th 1040, 1050 (2009). A privilege, either absolute or qualified, is a defense to a charge of slander of title. <u>Smith v. Commonwealth Land Title Ins. Co.</u>, 177 Cal. App. 3d 625, 630 (1986). Under California law, publications made in judicial or quasi-judicial proceedings are privileged. See Cal. Civ. Code § 47. Specifically, nonjudicial foreclosure documents are subject to this privilege. <u>See</u> <u>id.</u> § 2924(d); <u>Kachlon v. Markowitz</u>, 168 Cal. App. 4th 316, 333–34 (2008). However, this privilege is not absolute, and a defendant may still be liable for slander of title if he acted with malice. <u>See</u> <u>Kachlon</u>, 168 Cal. App. 4th at 343–44. Malice requires "that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable ground for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." <u>Id.</u> at 336.

Here, Plaintiffs base their slander of title claim on Defendant's recording of notice of default. (Doc. No. 9 ¶¶ 55–64.) However, Plaintiffs' claim fails because they have failed to show that the notice of default was false. The loan contract balloon payment provision provides that "[t]he maturity date of the Secured Debt is 2/20/2014 . . . ." (RJN Exh. B ¶ 3.) The loan contract also provides as remedies for default: "At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter." (<u>Id.</u> ¶ 15.) The contract defines default as: "Grantor will be in default if any party obligated on the Secured Debt fails to make payment when due." (<u>Id.</u> ¶ 14.) Defendant's notice of default is consistent with the facts alleged in Plaintiffs' complaint and the loan contract. In November 2013, Defendant informed Plaintiffs that a balloon payment on their loan would be due on February 20, 2014. (Doc. No. 9 ¶¶ 11–12.) The notice of default also states that the balance of principal and interest became due on February 20, 2014, (RJN Exh. G at 3.), the same date provided in loan contract, (RJN Exh. B ¶ 3). Plaintiffs do not dispute that they did not pay the amount due by this deadline, (Doc. No. 9 ¶ 13), and Plaintiffs therefore were

in default under the terms of the loan contract, (RJN Exh. B ¶¶ 3, 14). The notice of default states that as of October 27, 2017, Plaintiffs owed $53,576.70, (RJN Exh. G at 1), which is the same as what is alleged in Plaintiffs' complaint, (Doc. No. 9 ¶ 21). Therefore, Plaintiffs were in default, and Defendant acted within its rights under the loan contract in recording the notice of default and instituting foreclosure proceedings.

Plaintiffs contend that their loan contract was modified when an employee of Defendant told them to disregard letters threatening foreclosure and demanding final payment because such letters are generated automatically, and that Defendant would not take action as long as Plaintiffs were working with a Home Preservation Specialist. (Id. ¶ 19.) This led Plaintiffs to believe "as long as they kept making payments and working with the 'Home Preservation Specialist', Wells Fargo would not attempt to avail itself of the surprise 'balloon payment' provision of the loan agreement . . . ." (Id. ¶ 20.) But, such oral communications are insufficient to modify the parties' loan agreement. Under the statute of frauds, an agreement "for the sale of real property, or of an interest therein" must be in writing signed by the party to be charged in order to be valid. Cal. Civ. Code. § 1624(a)(3). Further, "[a] mortgage or deed of trust also comes within the statute of frauds." Secrest v. Sec. Nat'l Mortg. Loan Tr. 2002-2, 167 Cal. App. 4th 544, 552 (2008), as modified on denial of reh'g (Nov. 3, 2008). An agreement modifying a contract is subject to the statute of frauds if the underlying contract is governed by the statute of frauds. Id. at 553 (citing Cal. Civ. Code § 1698(a)). In addition, the loan contract itself prohibits amendment by oral agreement. (RJN Exh. B ¶ 23.)

Plaintiffs argue that the statute of frauds does not apply when the lender accepts partial performance and the borrower makes a serious change in position in reliance on an oral contract. (Doc. No. 12 at 9–12.) Plaintiffs allege that they performed by continuing to make regular payments after the balloon payment became due and by refraining from suing Defendant for "loan origination fraud after they discovered the balloon payment term." (Id. at 9.) In support of this, Plaintiffs rely on Secrest; Johnson v. Nationstar

6

3:18-cv-02520-H-BGS

Mortg., LLC, No. 3:17-CV-03676-WHO, 2018 WL 807370 (N.D. Cal. Feb. 9, 2018); and Chavez v. Indymac Mortg. Servs., 219 Cal. App. 4th 1052, 1055 (2013).

However, Plaintiffs' allegations are insufficient to exempt any modification to the loan agreement from complying with the statute of frauds. Secrest states that "[t]he payment of money is not sufficient part performance to take an oral agreement out of the statute of frauds . . . ." 167 Cal. App. 4th at 555 (citations omitted). Further, "forbearance agreements altering a mortgage are covered by the statute of frauds." Newgent v. Wells Fargo Bank, N.A., No. 09CV1525 WQH, 2010 WL 761236, at *5 (S.D. Cal. Mar. 2, 2010) (citing Secrest, 167 Cal. App. 4th at 553). Both Johnson and Chavez are unlike the present case because the plaintiffs in each of those cases alleged the existence of a written document confirming oral assurances. In Johnson, the court concluded that the defendant could not assert a statute of frauds defense where the plaintiff received an oral assurance of an adjusted pay schedule and alleged "the existence of a letter from Nationstar documenting some terms of the offer . . . ." 2018 WL 807370 at *4. The court there clarified that the statute of frauds does not require a written contract, rather, a note or memorandum subscribed by the party to be charged is adequate "if it identifies the subject of the parties' agreement, shows that they made a contract, and states the essential contract terms with reasonable certainty." Id. (citing Sterling v. Taylor, 40 Cal. 4th 757, 765–66 (2007)). In Chavez the defendant was estopped from asserting a statute of frauds defense where the defendant sent the plaintiff a loan modification agreement on which the plaintiff detrimentally relied, although the agreement did not meet the statute of frauds because the plaintiff executed the document, but the defendant did not. 219 Cal. App. 4th at 1057–1062.

Here, Plaintiffs do not allege the existence of any such memorandum or other written correspondence from Defendant stating the essential contract terms with reasonable certainty. Rather, Plaintiffs merely allege that Defendant's employee told them that Defendant would not foreclosure as long as Plaintiffs worked with a Home Preservation Specialist. (Doc. No. 9 ¶ 9.) Plaintiffs do not allege that they received any

document memorializing or corroborating the employee's assurances, nor do they even allege the existence of any such document. And again, the loan contract itself prohibits amendment by oral agreement. (RJN Exh. B ¶ 23.)

Plaintiffs further argue that Defendant's written correspondences modified the contract and meet the statute of frauds. (Doc. No. 12 at 12–13.) However, such communications, which consist of statements of account and information on Defendant's loan modification programs, in no way modified their existing contract. Such communications did not identify "the subject of the parties' agreement, show[] that they made a contract, and state[] the essential contract terms with reasonable certainty." Johnson, 2018 WL 807370 at *4 (citing Sterling, 40 Cal. 4th at 766). The statements of account merely showed Plaintiff's outstanding balance and did not absolve Plaintiffs of their responsibility to pay the balloon payment, which they failed to do by the due date, subsequently causing their default. Defendant's letters advertising their loan modification were not guarantees of loan modification, but rather invitations to apply for the programs. Plaintiffs in fact followed up by applying for such loan modification programs, but were ultimately denied by Defendant. (Doc. No. 9 ¶ 25.) Accordingly, the Court concludes that Plaintiffs have failed to plead a claim for slander of title.

### B. RESPA Violations

Plaintiffs allege that Defendant violated 12 U.S.C. § 2605(e)(2)(A)–(B) of RESPA by failing to reasonably investigate and adequately respond to Plaintiffs' inquiries (Doc. No. 9 ¶¶ 65–74.) Under RESPA, the servicer of a loan has an obligation to respond to borrower inquiries. 12 U.S.C. § 2605(e). In the relevant part, RESPA states:

> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

Id. § 2605(e)(1)(A). "[A] borrower's written inquiry requires a response as long as it (1) reasonably identifies the borrower's name and account, (2) either states the borrower's

"reasons for the belief . . . that the account is in error" or "provides sufficient detail to the servicer regarding other information sought by the borrower," and (3) seeks "information relating to the servicing of the loan." Medrano v. Flagstar Bank, FSB, 704 F.3d 661, 666 (9th Cir. 2012) (quoting 12 U.S.C. § 2605(e)(1)(A)–(B)). Within 30 days of receipt of a qualified written request, the servicer must: (1) make appropriate corrections with written notification to the borrower; (2) after investigation, provide the borrower with a written explanation including the statement of reasons for which the servicer believes the account is correct and contact information for assistance; or (3) after investigation, provide the borrower with a written explanation explaining why the information requested is unavailable and contact information for assistance. Id. § 2605(e)(2). For RESPA violations, 12 U.S.C. § 2605(f) provides that "[w]hoever fails to comply with any provision of this section shall be liable to the borrower for each such failure . . . ." 12 U.S.C. § 2605(f)(1).

"Numerous courts have read Section 2605 as requiring a showing of pecuniary damages to state a claim." Molina v. Wash. Mut. Bank, No. 09cv894, 2010 WL 431439, at *7 (S.D. Cal. Jan. 29, 2010) (collecting cases); see also Eronini v. JP Morgan Chase Bank NA, No. 08–55929, 2010 WL 737841, at *1 (9th Cir. Mar. 3, 2010) ("The district court properly dismissed the action because Eronini suffered no damages as a result of the alleged RESPA violation."), Copeland v. Lehman Bros. Bank, FSB, No. 09cv1774, 2011 WL 9503, at *3–4 (S.D. Cal. Jan. 3, 2011), Espinoza v. Reconstruct Co., N.A ., No. 09cv1687, 2010 WL 2775753, at *4 (S.D. Cal. Jul. 13, 2010). "This pleading requirement has the effect of limiting the cause of action to circumstances in which plaintiff can show that a failure to respond or give notice has caused them actual harm." Shepherd v. Am. Home Mortg. Servs., Inc., No. 09–1916, 2009 WL 4505925, at *3 (E.D. Cal. Nov. 20, 2009) (citation omitted). Courts "have interpreted this requirement liberally." Yulaeva v. Greenpoint Mortg. Funding, Inc., No. 09–1504, 2009 WL 2880393, at *15 (E.D. Cal. Sept. 9, 2009).

///

After considering the parties arguments, the Court concludes that Plaintiffs have failed to state a claim under RESPA. First, Plaintiffs allege a violation under 12 U.S.C. § 2605(e)(2)(B) for failure to reasonably investigate in response to Plaintiffs' inquiries. (Doc. No. 9 ¶¶ 68–69.) Plaintiffs allege that Defendant "failed to reasonably evaluate the Raikens for a loan modification." (Doc. No. 9 ¶ 70.) However, this is not a valid claim under RESPA. Plaintiffs allege that they applied for a home loan modification six times. (Id. ¶ 25.) Plaintiffs allege that each of these applications was denied either as incomplete or for failure to meet the program requirements. (Id.) Based on the complaint, Defendant provided Plaintiffs with the reasoning for the denials. (Id.) Plaintiffs here had no right to a loan modification, either under the loan contract or by law. See Mabry v. Superior Court, 185 Cal. App. 4th 208, 223 (2010) (California Civil Code § 2923.6 does not require lenders to provide loan modifications, but instead "merely expresses the hope that lenders will offer loan modifications on certain terms."). The Court is not in a position to evaluate Defendant's underwriting decisions, but rather, must evaluate the sufficiency of Plaintiffs' RESPA claims with regards to Defendant's responses to qualified written requests.

Plaintiffs allege two instances in which Cheryl Raiken provided written correspondence to Defendant, which were both via email to Defendant's employees. (Id. ¶¶ 37–39.) The emails, dated January 18 and 25, 2018, both state: "I hereby request you to provide me with the following documents as part of your inquiry into my HELOC Loan [number] with Wells Fargo. As per our conversations, I understand you are doing research into my complaints, which include improper actions and servicing of the loan. I request that Wells Fargo halt the action of foreclosure during this time of review." (Id. ¶¶ 37–39.) In these emails, Plaintiffs requested documents and that Defendant halt foreclosure proceedings. (Id.) However, Plaintiffs fail to allege whether Defendant responded to these emails and the extent of any such response, leaving the Court unable to analyze the sufficiency of any response. Plaintiffs only state that "[d]espite the Raikens' repeated requests for documents and complaints that Wells Fargo was

erroneously foreclosing on their home, Wells Fargo pressed ahead with the foreclosure." (Id. ¶ 40.) However, allegations that Defendant refused to halt foreclosure proceedings are insufficient to support a RESPA claim, especially considering that Defendant was acting within its rights under the loan contract. Further, Plaintiffs allege that if Defendant had reasonably investigated, it would "have discovered the underlying loan origination fraud." (Id. ¶ 69.) However, the Ninth Circuit has held that "letters challenging only a loan's validity or its terms are not qualified written requests that give rise to a duty to respond under § 2605(e)." Medrano, 704 F. 3d at 667.

Second, Plaintiffs allege a violation under 12 U.S.C. § 2605(e)(2)(A) for Defendant's failure to correct errors on Plaintiffs' account. (Doc. No. 9 ¶ 71.) This section requires that following a borrower's qualified written request, the servicer must make appropriate corrections and provide the borrower written notification of the corrections. 12 U.S.C. § 2605(e)(2)(A). But, Defendant was not in error—in recording the notice of default and beginning foreclosure proceedings, Defendant was acting within its rights under the loan contract because Plaintiffs were in default for failure to pay the balloon payment. Thus, there was no error for Defendant to correct. Accordingly, the Court concludes that Plaintiffs' claim for RESPA violations should be dismissed.

### C. Breach of Contract

Plaintiffs allege that Defendant breached an implied contract when it recorded the notice of default. (Doc. No. 9 ¶¶ 75–84.) Under California law, the elements of a claim for breach of contract are: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to the plaintiff. Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011). "The essential elements of a contract are: [1] parties capable of contracting; [2] the parties' consent; [3] a lawful object; and [4] sufficient cause or consideration." Lopez v. Charles Schwab & Co., 118 Cal. App. 4th 1224, 1230 (2004) (citing Cal. Civ. Code § 1550). Further, "[a]n essential element of any contract is the consent of the parties, or mutual assent." Donovan v. RRL Corp., 26 Cal. 4th 261, 270 (2001). "A court may resolve contractual claims on a

motion to dismiss if the terms of the contract are unambiguous." Alta Devices, Inc. v. LG Elecs., Inc., 343 F. Supp. 3d 868, 878–79 (N.D. Cal. 2018) (citing Bedrosian v. Tenet Healthcare Corp., 208 F.3d 220 (9th Cir. 2000)).

Here, Plaintiffs have failed to demonstrate any contractual breach by Defendant. As with Plaintiffs' claim for slander of title, Plaintiffs' breach of contract claim fails because Defendant's action were consistent with its rights under the loan contract. Alleged oral agreements to modify the contract are not enforceable because modification to the loan contract must comport with the statute of frauds. See Secrest, 167 Cal. App. 4th at 552–53. Plaintiffs argue that the contract was implicitly modified because Plaintiffs' partially performed or alternatively, based on written correspondence that Plaintiffs received from Defendant. (Doc. No. 12 at 8–13.) Plaintiffs' continued payments following their failure to pay the balloon payment in reliance on Defendant's employee's statements did not override the statute of frauds because Plaintiffs do not allege that they received any memorandum stating the essential contract terms with reasonable certainty. See Johnson, 2018 WL 807370 at *4. Additionally, written communications from Defendant in the form of account statements and letters inviting Plaintiffs to apply for Defendant's home preservation programs in no way modified the parties' existing contract. Finally, the loan contract itself prohibits amendment by oral agreement. (RJN Exh. B ¶ 23.) Therefore, the Court concludes that Plaintiffs' claim for breach of contract should be dismissed.

**D. Fraud**

Plaintiffs assert a claim for fraud, alleging that Defendant maliciously recorded the notice of default when Plaintiffs were not in default and concealed the fact that Plaintiffs were making monthly payments in order to initiate foreclosure proceedings. (Doc. No. 9 ¶¶ 85–93.) Under California law, "[t]he elements of intentional misrepresentation, or actual fraud, are: '(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage.'" Anderson v. Deloitte &

Touche, 56 Cal. App. 4th 1468, 1474 (1997). Under Federal Rule of Civil Procedure 9, a plaintiff must plead fraud with particularity. "Rule 9(b)'s particularity requirement applies to state-law causes of action." Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Id. at 1106 (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)). "'[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false.'" Id. at 1106 (quoting Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.), 42 F.3d 1541, 1548 (9th Cir. 1994)). "While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud" are not. Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989).

Here, Plaintiffs fail to show any fraud by Defendant, which acted in accordance with the parties' loan contract and Plaintiffs' outstanding debt. The parties are in agreement that the loan contract provides a balloon payment provision and Plaintiffs did not pay the balloon payment due February 20, 2014. (Doc. Nos. 9 ¶¶ 11–13, 45; 10-1 at 11; RJN Exh. B. ¶ 3.) Therefore, under the loan contract, Plaintiffs were in default for failure to make this payment, and Defendant acted within its rights to issue the notice of default and initiate foreclosure proceedings. (RJN Exh. B ¶¶ 14–15.) Plaintiffs argue that the notice of default was fraudulent because Defendant concealed that Plaintiffs had continued to make their monthly payments. (Doc. No. 9 ¶¶ 85–93.) However, these monthly payments do not remedy Plaintiffs' default for failure to pay the balloon payment due on February 20, 2014 under the loan contract. Plaintiffs also argue that the amount due on the notice of default should be zero. (Doc. No. 12 at 23.) But, in their complaint, Plaintiffs state that as of October 2017, they owed $53,158.70, (Doc. No. 9 ¶ 21), which is entirely consistent with the amount owed from the notice of default, (RJN Exh. G at 1). Accordingly, the Court concludes that Plaintiffs' claim for fraud should be dismissed.

### E. Intentional Infliction of Emotional Distress

Plaintiffs assert a claim for intentional infliction of emotional distress concerning their interactions with Defendant. (Doc. No. 9 ¶¶ 94–101.) The elements of a cause of action for intentional infliction of emotional distress are: (1) extreme and outrageous conduct by defendant; (2) intention to cause or reckless disregard of the probability of causing emotional distress; (3) severe emotional suffering; and (4) actual and proximate causation of the emotional distress. Cole v. Fair Oaks Fire Protection Dist., 43 Cal. 3d 148, 155 n.7 (1970). For conduct to be extreme and outrageous it must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community." Cervantez v. J.C. Penney Co., 24 Cal. 3d 579, 593 (1979). "Liability 'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" Molko v. Holy Spirit Assn., 46 Cal. 3d 1092, 1122 (1988). "Whether a defendant's conduct can reasonably be found to be outrageous is a question of law that must initially be determined by the court; if reasonable persons may differ, it is for the jury to determine whether the conduct was, in fact, outrageous." Berkley v. Dowds, 152 Cal. App. 4th 518, 534 (2007).

Here, Plaintiffs' claim for intentional infliction of emotional distress fails because Defendant's actions were not extreme and outrageous. "An assertion of legal rights in pursuit of one's own economic interests does not qualify as 'outrageous' under this standard." Yu v. Signet Bank/Va., 69 Cal. App. 4th 1377, 1398 (1999) (citations omitted). Defendant was acting consistent with its rights the loan contract—Plaintiffs were in default for failure to pay the balloon payment, and Defendant acted in accordance by recording the notice of default and instituting foreclosure proceedings. Defendant's actions with regards to the home preservation programs also were not outrageous—Defendant invited Plaintiffs to apply for such programs, Plaintiffs applied, and Defendant denied such applications as incomplete or for failure to qualify for the programs' requirements. Additionally, Plaintiffs have not alleged facts that show that Defendant intended to cause or disregarded the possibility of causing emotional distress. See Mehta

v. Wells Fargo Bank, N.A., 737 F. Supp. 2d 1185, 1204 (S.D. Cal. 2010). Plaintiffs' claim fails because Plaintiffs do not allege any conduct by Defendant that falls "outside that generally accepted in loan servicing and/or foreclosure . . . ." Dougherty v. Bank of Am., N.A., No. 2:15-CV-01226-TLN-DB, 2018 WL 1518574, at *9 (E.D. Cal. Mar. 28, 2018) (citing Flores v. EMC Mortg. Co., 997 F. Supp. 2d 1088, 1124 (E.D. Cal. Feb. 18, 2014)). Thus, the Court concludes that Plaintiffs claim for intentional infliction of emotional distress should be dismissed.

### F. Financial Elder Abuse

Plaintiff Cheryl Raiken brings a claim for financial elder abuse. (Doc. No. 9 ¶¶ 117–134.) California Welfare & Institutions Code § 15610.30 imposes liability on anyone who "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both" or who assists in such action. The statute provides for recovery of compensatory damages as well as attorney fees and costs. Id. § 15657.5.

Here, Plaintiffs have failed to demonstrate that Defendant took any property of Cheryl Raiken for wrongful use or with intent to defraud. "It is simply not tortious for a commercial lender to lend money, take collateral, or to foreclose on collateral when a debt is not paid. . . . [A] commercial lender is privileged to pursue its own economic interests and may properly assert its contractual rights." Stebley v. Litton Loan Servicing, LLP, 202 Cal. App. 4th 522, 528 (2011) (quoting Sierra–Bay Fed. Land Bank Assn. v. Superior Court, 227 Cal. App. 3d 318, 334–335 (1991)). In recording the notice of default and initiating foreclosure proceedings, Defendant was acting within its rights under the loan contract. "Foreclosing on a home is not actionable merely because it requires the former owner to move out." Stebley, 202 Cal. App. 4th at 528 (citations omitted). Further, Plaintiffs fail to show how their alleged unpleasant experiences navigating Defendant's loan modification application process would constitute Defendant taking property for wrongful use or with intent to defraud. Finally, Defendant never took or obtained Plaintiffs' real property because Plaintiffs sold the home prior to foreclosure.

(See Doc. No. 9 ¶ 41; RJN Exh. G.) Therefore, the Court dismisses Plaintiff Cheryl Raiken's claim for financial elder abuse.

### G. Violations of California's FAL and UCL

Plaintiffs' cause of action under California's FAL alleges that Defendant's letters regarding its loan modification and home preservation programs were fraudulent because Plaintiffs were unable to access such programs. (Doc. No. 9 ¶¶ 102–111.) Plaintiffs' UCL claim is derivative of its other claims. (Id. ¶¶ 112–116.) California's FAL prohibits any "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17500. The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Id. § 17200. Under these California statutes, conduct is deceptive or misleading if it is likely to deceive an ordinary consumer. Williams v. Gerber Products Co., 552 F.3d 934, 938 (9th Cir. 2008). "California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." Id. at 939; accord Linear Tech. Corp. v. Applied Materials, Inc., 152 Cal. App. 4th 115, 134–35 (2007). However, dismissal is appropriate if a court determines that as a matter of law, members of the public are not likely to be deceived. Pelayo v. Nestle USA, Inc., 989 F. Supp. 2d 973, 978 (C.D. Cal. Oct. 25, 2013). A plaintiff must show "more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." Lavie v. Procter & Gamble Co., 105 Cal. App. 4th 496, 508 (2003).

Here, Plaintiffs' FAL claim fails because Plaintiffs have failed to show unfair, deceptive, or misleading letters from Defendant regarding its loan modification and home preservation programs. See Cal. Bus. & Prof. Code § 17500. No reasonable consumer could interpret Defendant's letters inviting Plaintiffs to apply for its loan modification and home preservation programs as a guarantee of admittance to such programs or

16

3:18-cv-02520-H-BGS

modification of the existing loan contract. Defendant's letters merely described the programs and instructed Plaintiffs to call Defendant in order to "determine what option is best to help overcome the home equity challenges." (Doc. No. 9 ¶¶ 106–108.) Upon receiving these letters, Plaintiffs in fact applied for the programs and were denied because their applications were incomplete or they did not qualify for the programs. (Id. ¶ 25.) Therefore, Plaintiffs have failed to show "that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." Lavie, 105 Cal. App. 4th at 508.

Plaintiffs' UCL claim is derivative of Plaintiffs' other claims and therefore, similarly fails for failure to show any fraudulent, unfair, or unlawful conduct by Defendant. Accordingly, the Court concludes that Plaintiffs have failed to plead causes of action under California's UCL and FAL.

## Conclusion

For the foregoing reasons, the Court grants Defendant's motion to dismiss, and the Court dismisses Plaintiffs' complaint without prejudice. The Court grants Plaintiffs leave to amend, if they can do so to cure the deficiencies noted in this order, on or before **March 20, 2019**.

**IT IS SO ORDERED.**

DATED: February 20, 2019

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

17
3:18-cv-02520-H-BGS